159 So.2d 108 (1963)
Ernestine A. KING et al., Appellants,
v.
DOUGLAS AIRCRAFT CO., Inc., et al., Appellees.
No. 62-763.
District Court of Appeal of Florida. Third District.
December 20, 1963.
Rehearing Denied January 15, 1964.
*109 Nichols, Gaither, Beckham, Colson & Spence and Alan R. Schwartz, Miami, for appellants.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell; Smathers & Thompson, Miami, for appellees.
Before CARROLL, TILLMAN PEARSON and HENDRY, JJ.
PER CURIAM.
The appellants-plaintiffs are the wives and representatives of four Braniff Airway's pilots who were killed while riding as passengers on a Braniff flight which crashed on March 25, 1958. The plaintiffs brought actions under the Wrongful Death and Survivor statutes against Douglas Aircraft Co., Inc., and Curtiss-Wright Corp. alleging negligence and breach of an implied warranty that the equipment was of merchantable quality and reasonably fit for the use intended. Summary final judgment was entered in favor of appellee, Douglas, and the plaintiffs appealed. From our review of the record in a light most favorable to the plaintiffs we find error and reverse.
The plane in question, a DC-7C, crashed following a fire in the No. 3 engine. This engine had been manufactured by Curtiss-Wright, sold to Douglas and incorporated by Douglas in a DC-7C aircraft which it sold to Braniff. It appears that this model of engine was interchangeable among DC-7C aircraft and that the particular engine involved in this accident had been overhauled by Braniff and had been transferred to the aircraft in question from another aircraft purchased from Douglas. It further appears that the engine in question had over 3,000 hours of use by Braniff.
In opposition to Douglas' motion for summary judgment, plaintiffs filed an affidavit of an aeronautical engineer, who expressed his expert opinion that the design of this particular model engine was faulty. His opinion was based upon his study of various documents, reports, and photographs which were enumerated in his affidavit and for the most part either referred to in, or made a part of, numerous depositions on file. The expert detailed his observations and specified the conclusions which he drew therefrom. Basically, it was his conclusion that a fatigue crack caused the cylinder barrel in the No. 11 cylinder of the engine to separate, resulting in combustion chamber failure. He stated that the fatigue crack "was a direct result of an inadequate combustion chamber design"; that "the cylinder was overloaded, that is, more power was developed *110 in the combustion chamber than the cylinder structure could safely carry".
In broad terms the question before us is whether the trial judge was correct in ruling that there was no genuine issue of material fact with regard to the liability of the defendant, Douglas, and that said defendant was entitled to a judgment as a matter of law. More specifically, it is necessary for us to determine whether the facts, as alleged by the plaintiffs, could, if proved to the satisfaction of a jury, give rise to liability on the part of Douglas under the negligence and implied warranty theories. We hold that they could.
After the famous decision in the case of MacPherson v. Buick Motor Company[1] the overwhelming majority of the courts throughout the country appear to have adopted the modern rule which holds that a manufacturer of a product, which, if negligently made involves unreasonable risk of harm to those using it for the intended purpose, may be held liable to third parties for resulting injuries.[2] Further, this court has joined with other courts in holding that an assembler of a product, who sells the completed product as its own and thereby represents to the public that it is the manufacturer, is considered the manufacturer of the component part.[3]
We further find that the implied warranty theory is applicable to the instant factual situation.
In the case of Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299, our Supreme Court held that a manufacturer of a chair could be found liable under the theory of implied warranty to a prospective purchaser in a retail store who was injured by a latent defect under the arm of the chair which severed one of his fingers. The court quoted with approval the following statement contained in Restatement of Law of Torts, Sec. 398, Vol. 2, page 1084:
"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use, for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."
The court recognized that the chair in question was not a dangerous instrumentality "such as airplanes". If the theory is applicable to the manufacturer of a chair, it is unquestionably applicable to an airplane manufacturer.
In the recent case of Goldberg v. Kollsman Instrument Corp.,[4] the New York Court of Appeals held that an airplane manufacturer's implied warranty of fitness of the airplane for the contemplated use ran in favor of an airline passenger, stating:
"In MacPherson's day enforcement required a suit in negligence. Today, we know from Greenberg v. Lorenz, [9 N.Y.2d 195, 213 N.Y.S.2d 39, 173 N.E.2d 773]; Randy Knitwear, Inc. v. American Cyanamid Co. (supra), [11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399] and many another decision in this and other States (see, for instance, Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1, and Thomas v. Leary, 15 A.D.2d 438, 225 N.Y.S.2d 137) that, at least where an article *111 is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated. The MacPherson [v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696] holding was an `extension' of existing court-made liability law. In a sense, Greenberg v. Lorenz and Randy Knitwear, Inc. v. American Cyanamid Co. (supra) were extensions in favor of noncontracting consumers. But it is no extension at all to include airplanes and the passengers for whose use they are built  and, indeed, decisions are at hand which have upheld complaints, sounding in breach of warranty, against manufacturers of aircraft where passengers lost their lives when the planes crashed (see, e.g., Conlon v. Republic Aviation Corp., D.C., 204 F. Supp. 865; Middleton v. United Aircraft Corp., D.C. 204 F. Supp. 856; Ewing v. Lockheed Aircraft Corp., D.C., 202 F. Supp. 216; Hinton v. Republic Aviation Corp., D.C., 180 F. Supp. 31)."[5]
Appellee argues that it is relieved of liability because the engine in question had been transferred from another Douglas aircraft and had, in fact, been safely used for 3,000 hours. We hold that these facts, by themselves, were insufficient to foreclose liability as a matter of law but are factors for jury consideration.
We hold that it was error to have granted a summary final judgment.
Accordingly, the summary final judgment appealed is reversed and the cause is remanded for further proceedings consistent with this opinion.
Reversed with directions.
NOTES
[1] 217 N.Y. 382, 111 N.E. 1050 (1916).
[2] See Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299; A.E. Finley and Associates, Inc. v. Medley, Fla.App. 1962, 141 So.2d 613.
[3] See A.E. Finley and Associates, Inc. v. Medley, supra; Boeing Airplane Co. v. Brown, 291 F.2d 310 (9th Cir.1961); Markel v. Spencer, 5 A.D.2d 400, 171 N.Y.S.2d 770 (1958) aff'd, 5 N.Y.2d 958, 184 N.Y.S.2d 835, 157 N.E.2d 713 (1959); Wojciuk v. United States Rubber Company, 13 Wis.2d 173, 108 N.W.2d 149 (1961).
[4] 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963).
[5] See also Courtois v. General Motors Corp., 37 N.J. 525, 182 A.2d 545, 554 (1962).